UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**RUSSELL D.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00964-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by issued by an Administrative Law Judge on April 22, 2021 following a stipulated order of remand from this Court, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 5), and the Commissioner has filed a similar motion (Doc. 6).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

    On October 22, 2015, Plaintiff filed his applications for benefits, alleging disability since April 1, 1995.  Those applications were denied initially and on reconsideration.  An Administrative Law Judge then held a hearing on February 6, 2018, after which he found that Plaintiff was not disabled.  After the Appeals Council denied review, Plaintiff filed a complaint in this Court, and, as noted above, the parties then stipulated to a remand.  A new administrative hearing was held before a different ALJ on February 5, 2021.  Plaintiff and a vocational expert, Melissa J. Fass-Karlin, testified at that hearing.

    The ALJ issued a decision on April 27, 2021.  He found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011, that the earliest date when he was eligible for benefits was August 27, 2010, the date on which he turned 22, and that he had not engaged in substantial gainful activity since his alleged onset date.  Next, the ALJ concluded that, prior to turning 22 and prior to his last insured date, Plaintiff had no severe impairments.  Turning to Plaintiff's claim for supplemental security income, the ALJ found that Plaintiff had severe impairments including mental health impairments variously described as social phobia, depressive disorder not otherwise specified, post-traumatic stress disorder, attention deficit hyperactive disorder, psychotic disorder not otherwise specified, major

depressive disorder, and polysubstance use disorder.  He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ determined that Plaintiff was able to perform a full range of work at all exertional levels.  However, he had nonexertional limitations including the inability to work at unprotected heights or around moving machinery, being unable to operate a motor vehicle as a job duty, and a restriction to performing simple, routine, and repetitive tasks, to making simple work-related decisions, to only occasional interaction with supervisors and coworkers, and the inability to interact with the public.  After finding that Plaintiff had no past relevant work, the ALJ, relying on testimony from the vocational expert, found that Plaintiff could perform jobs such as kitchen helper, cook helper, and hospital cleaner.  He also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff had not been under a disability at any time from April 1, 1995 through the date of his decision.

In his motion for judgment on the pleadings, Plaintiff raises this issue: "The ALJ impermissibly relied on their lay interpretation of medical evidence."  Plaintiff's memorandum, Doc. 5-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the first administrative hearing held in 2018, Plaintiff testified that he lived with his father and had obtained his GED.  He had last worked in 2012 through a temporary services agency, and his last full-time job was in 2009.  He had also done factory work in the past.

When asked about his limitations, Plaintiff said that he suffered from depression and anxiety which made it hard for him to focus, concentrate, and remember things.  He also had social phobia.  He was receiving treatment for his conditions and had been since he was young, and he was taking medication for both anxiety and depression as well as for insomnia.  The prior year, he had sought emergency room treatment for suicidal thoughts.  Also, Plaintiff said that due to a back injury, he had been prescribed Lortabs, and then began abusing that medication and other opiates.  He was also taking medication to help with his substance abuse disorder.

In a typical day, Plaintiff said that he did not engage in outside activities but occasionally visited with family or friends or went to the store.  He also occasionally watched television or used a computer, and he could do household chores.

At the second administrative hearing, Plaintiff reaffirmed that he suffered from anxiety and depression.  He said he also had suffered a brain injury that caused headaches and memory loss.  It was a daily struggle for him to get out of bed and accomplish things. He was then living with a girlfriend and they shared household chores.  He had panic attacks when in public.

Plaintiff said that he had been working at a Pizza Hut but was discharged because he could not remember the instructions for how to do his work properly.

The vocational expert, Ms. Fass-Karlin, was asked questions about someone with Plaintiff's vocational profile who had no exertional limitations but who had certain environmental and psychological limitations, including being limited to simple tasks and having no public contact. She responded that such a person could work as a kitchen helper, cook helper, or hospital cleaner, and she also gave numbers for those jobs as they existed in the national economy. She identified further jobs that such a person could do if he or she were limited to light work with only occasional reaching, but said that if the person were off work for two days per month or for more than 10% of the time, employment would not be possible. The same would be true if constant reminders to stay on task were needed.

### B. Medical Evidence

The relevant medical evidence shows the following. For the most part, it is accurately summarized in Plaintiff's memorandum. Because, as more fully discussed below, Plaintiff's argument is based on what is not in the evidence, rather than what is, the Court will include only a brief summary of the medical evidence here.

Plaintiff had seen a mental health provider throughout the relevant time period. His diagnoses included, at various times, social phobia, depressive disorder, PTSD, generalized anxiety disorder, and ADHD. He was prescribed various medications including Wellbutrin, Risperidone, Clonazepam, Xanax, and Effexor. His symptoms included hearing voices and paranoia as well as a flat affect, poor impulse control, and, as he testified, suicidal ideation at one point. He also had limited insight and judgment.

In 2016, Dr. Bruno, a state agency reviewer, concluded that Plaintiff did not have a severe mental impairment. No consultative psychiatric evaluation was ever conducted, and there is no treating source statement about functional limitations.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

In his claim of error, Plaintiff argues that it was improper for the ALJ to formulate a mental residual functional capacity finding in the absence of any opinion evidence concerning the limitations caused by Plaintiff's severe mental impairments.  Given the absence of medical opinions, Plaintiff asserts that the only way the ALJ could have arrived at a detailed evaluation of Plaintiff's mental functional capacity was to use his own lay judgment, and such an approach is inconsistent with the applicable case law.  The Commissioner responds that an ALJ is permitted to craft a residual functional capacity finding without the need for medical opinion evidence even in cases where mental, and not physical, impairments are the primary bases for potential disability.

The ALJ explained his decision this way.  As to Dr. Bruno's opinion that no severe mental impairment was present, the ALJ said that "the State agency opinion that the claimant has no severe mental impairment is given little weight. The claimant's treatment records support a finding of a severe mental health impairment as he has engaged in treatment with multiple sources...." (Tr. 667).  In the section of the decision in which the residual functional capacity finding was made, the ALJ summarized the treatment records from Plaintiff's psychiatrist, Dr. Hashim, but did not actually explain how those records informed his finding.  Rather, he stated, in the section of the decision devoted to the Listing of Impairments analysis, that

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental

function analysis.

(Tr. 664).  In that analysis, the ALJ found that Plaintiff had a moderate limitation in remembering, understanding, and applying information, a moderate limitation in interacting with others, a moderate limitation in the areas of concentration, persistence, and pace, and a moderate limitation in adapting or managing oneself.  It appears that the ALJ translated these four areas of limitation into the functional restrictions he found, which, as noted above, included a limitation to simple, routine repetitive tasks, the ability to make simple work-related decisions, the ability to interact with others in the workplace on an occasional basis, and the total inability to deal with the public.  This method of decision-making, which essentially involves importing wholesale the Listing of Impairment analysis, which, as the ALJ himself noted, is not meant to be a residual functional capacity finding, is, in the Court's experience, unusual, but the remand being ordered here does not rest on that fact.

The question of when an ALJ may, or may not, make a residual functional capacity finding that does not correspond to any particular medical opinion in the record is one that is often raised in cases of this type.  Recently, the Court of Appeals articulated the general legal principles that are applicable, stating in *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), that

> we ... reject [Plaintiff's] argument that, having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was thereby prohibited from making an RFC finding whatsoever. The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence. [citation omitted].  And the ALJ bears "the final responsibility" for making RFC determinations. 20 C.F.R. § 404.1527(d)(2). It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.

This Court has consistently followed these legal dictates.  *See, e.g., Starcher v. Comm'r of Soc. Sec.*, 2020 WL 6737403 (W.D.N.Y. Nov. 16, 2020); *Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957, at *4 (W.D.N.Y. Oct. 17, 2019).  The question in this case, however, is not the extent to which an ALJ may arrive at a different conclusion on the issue of functional capacity than did the treating or examining sources who expressed opinions on that subject, but whether an ALJ may, on this particular record, craft a residual functional capacity finding in the absence of any opinion evidence at all.

In a similar case, one court has said this:

> The Court notes that an ALJ's RFC determination may still be valid even when it "does not perfectly correspond with any of the opinions of medical sources cited in his decision." [citation omitted].  Nonetheless, there must be some evidence underlying the ALJ's RFC, as to find otherwise would allow the ALJ "to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Medical

records and findings alone cannot provide the substantial evidence necessary to
make an RFC determination in the absence of medical opinion evidence. *See
Pearson v. Comm'r of Soc. Sec.*, No. 20-cv-3030 (AMD), 2021 WL 3373132, at
*4 (E.D.N.Y. Aug. 3, 2021).

*Pichardo v. Comm'r of Soc. Sec.*, --- F.Supp.3d ----, 2024 WL 360725, at *9 (E.D.N.Y. Jan. 31, 2024). This Court has echoed that reasoning; "[b]ecause an ALJ is not a medical professional, however, an ALJ is generally not qualified to assess a plaintiff's capacity for work on the basis of bare medical findings." *Lewis v. Comm'r of Soc. Sec.*, 2020 WL 5200692, at *3 (W.D.N.Y. Sept. 1, 2020). *See also Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 128 (W.D.N.Y. 2018) (""[W]here the record primarily discusses a plaintiff's *impairments*, symptoms, and treatment, but does not shed light on the plaintiff's [functional] limitations, the ALJ may not rely on the record in determining the plaintiffs RFC.").

The Commissioner argues that various cases have upheld an ALJ's making a mental residual functional capacity finding without any opinion evidence as to functional limitations. The only one of those cases which appear pertinent here is *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5 (2d Cir. Jan. 8, 2017). There, there was opinion evidence from the claimant's treating source as to mental limitations, but the ALJ rejected that opinion and instead relied on treatment notes which "provide[d] contemporaneous medical assessments of [the claimant's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity." *Id*. at *8. This Court has explained the holding in *Monroe* in this way:

> "While in some circumstances, an ALJ may make an RFC finding without
> treating source opinion evidence, the RFC assessment will be sufficient only
> when the record is 'clear' and contains 'some useful assessment of the claimant's
> limitations from a medical source.' " *Muhammad v. Colvin*, No.
> 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017)
> (internal citation omitted). In other words, the ALJ may not interpret raw medical
> data in functional terms. Thus, where the record does not contain a useful
> assessment of Plaintiff's physical limitations, *Monroe* is of no help to the
> Commissioner.

*Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, at *3 (W.D.N.Y. Mar. 28, 2019).

Here, Dr. Hashim's various notes do comment on Plaintiff's symptoms, but they speak in general terms about "high levels of anxiety," (Tr. 322), the fact that Plaintiff appeared "quite fidgety, restless, and anxious," *id.*, that he had mild to moderate levels of depression (Tr. 324), panic attacks (Tr. 329), auditory hallucinations (Tr. 331), and "severe concentration and attention problems," *id*., and paranoia (Tr. 334). At other times, however, Plaintiff expressed good control of his anxiety and depression, *see, e.g.,* Tr. 336-39. Later notes, including emergency room records, indicate increased depression and suicidal ideation, *see* Tr. 368, and Dr. Hashim subsequently reported that Plaintiff suffered from "off and on" concentration, Tr.

531, additional panic attacks, and depression which was "sometimes severe." *Id*.

In the Court's view, these notes do not provide a meaningful assessment of Plaintiff's functional limitations in the workplace from which a lay person could reasonably derive a mental residual functional capacity finding.  That makes this case distinguishable from *Monroe* and more in line with cases from this Court, such as *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018), where the Court observed that

> the leeway given to ALJs to make "common sense judgments" does not necessarily extend to the assessment of mental limitations, which are by their very nature "highly complex and individualized." *Nasci v. Colvin*, 2017 WL 902135 at *9, 2017 U.S. Dist. LEXIS 31937 (N.D.N.Y. 2017) (because mental limitations determinations are extremely complex, an ALJ's mental RFC finding cannot be rendered solely on common sense, but requires medical opinion evidence).

As all of the above cases indicate, situations where an ALJ is entitled to make a determination as to mental residual functional capacity without any opinion evidence at all are rare, and depend on the level of detail about functional capacity contained in the treatment notes.  This is simply not one of those cases.  Consequently, the matter must be remanded for further proceedings.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 5), **DENIES** the Commissioner's motion (Doc. 6), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**